PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**December 20, 2005**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>DEANE DeLAVERN and LINDA DELAVERN,<br><br>Debtors. | Case No. 05-41964 |
| KATHRYN ANN ELLIS, In Her Capacity As Duly Appointed Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR CREDIT COMPANY, a Delaware corporation doing business in the State of Washington,<br><br>Defendant. | Adversary No. 05-04153<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

THIS MATTER came before the Court on December 1, 2005, on cross-motions for summary judgment filed by Kathryn Ann Ellis, Chapter 7 Trustee (Trustee), and Ford Motor Credit Company (Ford). The Trustee seeks summary judgment on her action under 11 U.S.C. § 547(b), while Ford seeks summary judgment on the defense available under 11 U.S.C. § 547(c).

MEMORANDUM DECISION - 1

## FINDINGS OF FACT

The facts are not in dispute. On November 4, 2004, Ford obtained a judgment against Deane and Linda DeLavern (Debtors) for $9,750.59. On November 23, 2004, Ford recorded its judgment with the Pierce County Auditor. In December, 2004, the Debtors sought to refinance their residence. Ford agreed to release its judgment lien in exchange for a partial payment of the judgment in the sum of $5,050. Ford's attorney received the payment on December 16, 2004. The refinance also paid Citibank $900.18, which had a judgment lien on the Debtors' home. At the time of the refinance, the residence was valued at $210,000, and the mortgage balance was $191,375.47 according to the Trustee, or $191,540.49 according to Ford. The difference in these amounts is not material, and for purposes of summary judgment, the Court will rely on the Trustee's figure. After the refinance, the mortgage balance was $206,250. The Debtors filed bankruptcy under Chapter 7 on March 7, 2005.

The Trustee filed the current adversary proceeding on August 9, 2005, alleging a preferential transfer pursuant to 11 U.S.C. §§ 547(b), 550, and 551. The Trustee filed the current motion on November 4, 2005. In response, Ford filed its summary judgment motion on November 15, 2005. After oral argument on December 1, 2005, Ford and the Trustee filed supplemental pleadings.

## CONCLUSIONS OF LAW AND DISCUSSION

The Trustee argues that the only issue before the Court on the Trustee's motion is whether Ford's judgment lien pursuant to RCW 6.13.090 attached to an interest in property of the Debtors, rendering Ford a secured creditor at the time of the refinance, or whether, because of the Debtors' homestead, the lien was unable to attach to the Debtors' property, rendering Ford an unsecured creditor whose payment can be avoided under 11 U.S.C. § 547(b). The parties agree that the issue of attachment is one of state law. While there is no

MEMORANDUM DECISION - 2

Washington case directly on point, there is sufficient case law containing applicable analysis for this Court to determine the issue raised.

RCW 6.13.090 provides that "[a] judgment against the owner of a homestead shall become a lien <u>on the value of the homestead property in excess of the homestead exemption</u> from the time the judgment creditor records the judgment . . . ." (Emphasis added.) It is undisputed that when the Debtors refinanced their home, the residence was valued at $210,000, and after considering the first mortgage, the Debtors had between $18,000 and $19,000 equity remaining. Pursuant to RCW 6.13.030, the Debtors under state law were eligible for a homestead exemption up to $40,000. Thus, the Trustee contends that because there was no value beyond the homestead exemption to which Ford's lien could attach, Ford was unsecured at the time of the transfer and received more than it would have if the transfer was not made.

Ford disagrees with the Trustee's analysis. Relying on <u>Wilson Sporting Goods Co. v. Pedersen</u>, 76 Wn. App. 300 (1994), Ford contends that even if there was no value in excess of the homestead, the judgment lien attached to the Debtors' property. In that case, the Washington State Court of Appeals, Division I, considered whether a lien created pursuant to RCW 6.13.090 attaches only to the "abstract concept of excess value," or whether it is a lien on the property itself. <u>Wilson Sporting Goods</u>, 76 Wn. App. at 305. The state appellate court ruled that a lien is created on the property. <u>Wilson Sporting Goods</u>, 76 Wn. App. at 306. The court equated a judicial lien under RCW 6.13.090 to a second mortgage, in that the second mortgage is for a certain amount, but the value of the second mortgage is limited by the value of the property in excess of the first mortgage. <u>Wilson Sporting Goods</u>, 76 Wn. App. at 305-06. Similarly, a judicial lien under RCW 6.13.090 is for a specific amount, but the value is clearly limited by the value of the property in excess of the homestead. In either case, however, the lien first is created on the property. Under the <u>Wilson Sporting Goods</u> analysis,

MEMORANDUM DECISION - 3

1 Ford argues that its lien attached to the Debtors' property even though there was no value in
2 excess of the homestead.

3 The Wilson Sporting Goods case, however, must be reconciled with two subsequent
4 Division I cases, In re Deal, 85 Wn. App. 580 (1997) and Sweet v. O'Leary, 88 Wn. App. 199
5 (1997). In those cases, the state appellate court acknowledged that consistent with the
6 holding in Wilson Sporting Goods, a lien under RCW 6.13.090 is created on property. In
7 reconciling their opinions with the Washington State Supreme Court decision in Mahalko v.
8 Arctic Trading Co., 99 Wn.2d 30 (1983), overruled on other grounds by Felton v. Citizens Fed.
9 Sav. & Loan Ass'n, 101 Wn.2d 416, 424 (1984), the state appellate court, however, clarified
10 this holding.

> The *Mahalko* court said that "[g]enerally speaking, personal judgments become liens upon the real property of the judgment debtor. RCW 4.56.190-.200. *Such judgments do not become liens upon real property to which the homestead exemption applies.*" *Mahalko*, 99 Wn.2d at 34, 659 P.2d 502 (emphasis added). This portion of the *Mahalko* opinion is still good law and was not undermined, but rather was confirmed by the subsequent enactment of RCW 6.13.090.

Deal, 85 Wn. App. at 585. The state appellate court relied on state law that "homestead and
exemption laws are favored . . . and are to be liberally construed." Sweet, 88 Wn. App.
at 204. Subsequent to Deal and Sweet, the state appellate court in an analysis of
RCW 6.13.090, confirmed the special protections afforded homestead property by noting that
"the homesteader has a vested right in the homestead exemption," but not in the value of the
homestead property in excess of the exemption. Robin L. Miller Constr. Co. v. Coltran,
110 Wn. App. 883, 891 (2002).

Thus, while a judgment lien is created on property rather than value pursuant to Wilson
Sporting Goods, under the more specific analysis of Deal and Sweet, it cannot attach to
homestead property. In this case, there was no value above the Debtors' homestead

MEMORANDUM DECISION - 4

1 Ford argues that its lien attached to the Debtors' property even though there was no value in
2 excess of the homestead.

3 The Wilson Sporting Goods case, however, must be reconciled with two subsequent
4 Division I cases, In re Deal, 85 Wn. App. 580 (1997) and Sweet v. O'Leary, 88 Wn. App. 199
5 (1997). In those cases, the state appellate court acknowledged that consistent with the
6 holding in Wilson Sporting Goods, a lien under RCW 6.13.090 is created on property. In
7 reconciling their opinions with the Washington State Supreme Court decision in Mahalko v.
8 Arctic Trading Co., 99 Wn.2d 30 (1983), overruled on other grounds by Felton v. Citizens Fed.
9 Sav. & Loan Ass'n, 101 Wn.2d 416, 424 (1984), the state appellate court, however, clarified
10 this holding.

> The *Mahalko* court said that "[g]enerally speaking, personal judgments become liens upon the real property of the judgment debtor. RCW 4.56.190-.200. *Such judgments do not become liens upon real property to which the homestead exemption applies.*" *Mahalko*, 99 Wn.2d at 34, 659 P.2d 502 (emphasis added). This portion of the *Mahalko* opinion is still good law and was not undermined, but rather was confirmed by the subsequent enactment of RCW 6.13.090.

Deal, 85 Wn. App. at 585. The state appellate court relied on state law that "homestead and exemption laws are favored . . . and are to be liberally construed." Sweet, 88 Wn. App. at 204. Subsequent to Deal and Sweet, the state appellate court in an analysis of RCW 6.13.090, confirmed the special protections afforded homestead property by noting that "the homesteader has a vested right in the homestead exemption," but not in the value of the homestead property in excess of the exemption. Robin L. Miller Constr. Co. v. Coltran, 110 Wn. App. 883, 891 (2002).

Thus, while a judgment lien is created on property rather than value pursuant to Wilson Sporting Goods, under the more specific analysis of Deal and Sweet, it cannot attach to homestead property. In this case, there was no value above the Debtors' homestead

MEMORANDUM DECISION - 4

NOT FOR PUBLICATION

exemption. Because Ford's judgment lien could not attach to the Debtors' homestead property, there was no property to which a lien could attach, rendering Ford unsecured at the time of the refinance. Accordingly, all five requirements of 11 U.S.C. § 547(b) have been met, and the Trustee is entitled to summary judgment on this issue.

Ford contends, however, that releasing its lien constituted new value given as a contemporaneous exchange of new value, pursuant to 11 U.S.C. § 547(c)(1). Under this provision, the Trustee may not avoid a transfer that was "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1).

Relying on a Tenth Circuit case, Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.), 792 F.2d 125, 127 (10th Cir. 1986), Ford asserts that a release of a lien in exchange for a debtor's payment may be a contemporaneous exchange for new value. The purpose of 11 U.S.C. § 547(c)(1) is to "accomplish proportionate distribution of the debtor's assets among its creditors, and therefore to prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all." Fredman v. Milchem, Inc. (In re Nucorp Energy, Inc.), 902 F.2d 729, 733 (9th Cir. 1990). A payment to a fully secured creditor is not preferential because the payment does not deplete the bankruptcy estate. See Committee of Creditors Holding Unsecured Claims v. Koch Oil Co. (In re Powerline Oil Co.), 59 F.3d 969, 972 (9th Cir. 1995). The Ninth Circuit has recognized that the release of a security interest to the extent of a payment is one form of "new value" that a creditor may give in exchange for the debtor's payment. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 959 (9th Cir. 1989). The bankruptcy court, however, must "'measure the value given to the creditor and the new value given to the debtor in determining the extent to which the trustee may void a contemporaneous exchange.'" Nucorp

MEMORANDUM DECISION - 5

Energy, 902 F.2d at 733 (quoting Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Sys., Inc.), 861 F.2d 1555, 1558-59 (11th Cir. 1988)). "Value should be measured at the time of the transfer." Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.), 25 F.3d 728, 733 (9th Cir. 1994) (citing Nucorp Energy, 902 F.2d at 733). "The burden of proving the specific measure of the new value is on the party seeking the § 547(c)(1) shelter." Womack v. Houk (In re Bangert), 226 B.R. 892, 902 (Bankr. D. Mont. 1998) (citing Grant Chevrolet, 25 F.3d at 733).

In this case, the Court has determined that Ford was unsecured at the time of the refinance. Accordingly, Ford could not release an interest in the Debtors' property that it did not, in fact, have. The contemporaneous exchange for new value exception, therefore, does not protect the Debtors' $5,050 payment, to the extent Ford's interest was unsecured. See Powerline Oil, 59 F.3d at 973-74. Although Ford's lien may be a cloud on the title, it has no value and could be removed by a state court proceeding in a quiet title action or by some other equitable proceeding. See, e.g., Washington Real Property Deskbook, § 23.4(2) Practice Tip (3d ed. Wash. State Bar Ass'n 1996). Consequently, Ford is not entitled to summary judgment on the defense available under 11 U.S.C. § 547(c).

DATED:	December 20, 2005

_Paul B. Snyder_
_____
Paul B. Snyder
U.S. Bankruptcy Judge

NOT FOR PUBLICATION

MEMORANDUM DECISION - 6